UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| WHITING-TURNER CONTRACTING CO., <br><br> Plaintiff, <br> v. <br> FIRST MOUNTAIN BANCORP, <br><br> Defendants. | Case No. 2:13-cv-00916-GMN-PAL <br><br> **REPORT OF FINDINGS AND RECOMENDATION** <br><br> (Mtn for Default Judgment – Dkt #17) |

      This matter is before the court on Plaintiff Whiting-Turner Contracting's Motion for default judgment (Dkt #17) filed September 17, 2013. Plaintiff seeks to recover $494,533.22 plus post-judgment interest against Defendant First Mountain Bancorp for failing to pay pursuant to an Irrevocable Trust Receipt, which is attached to the Motion as Exhibit A. On June 20, 2013, Plaintiff filed a Motion for Entry of Default (Dkt. #8), and the Clerk entered default on June 21, 2013. *See* Clerk's Entry of Default (Dkt. #9). Plaintiff's unopposed Motion for Default Judgment was referred to the undersigned for a Report of Findings and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rules IB 1-3 and 1-4.

## BACKGROUND

      This suit arises from Plaintiff's attempt to collect on payment and performance bonds for breach of contract by a subcontractor. Plaintiff was the general contractor on a construction project in Onslow, North Carolina, that included construction of various buildings with elevators. *See* Complaint (Dkt. #1) at ¶ 5. Plaintiff alleges that on October 25, 2010, it subcontracted with Elevator Specialists of Carolina ("ESC"), to complete the elevator work on the project. *Id.* at ¶¶ 6-7. As security for the subcontract, ESC, as principal, and Lori Diaz, individually, executed a payment bond and a performance bond, each in the amount of $542,223.00. *Id.* at ¶ 8. Under the terms of the performance bond, ESC and Diaz promised to pay Plaintiff $542,223.00. *Id.* at ¶

9.  If, however, ESC performed all the terms and conditions of the subcontract and paid Plaintiff for any loss, damage, expense Plaintiff incurred because ESC failed to perform, the obligation to pay on the performance bond would be void; otherwise, the performance bond would remain in effect. *Id*. Additionally, under the terms of the payment bond, ESC and Diaz promised to pay $542,223.00 to Plaintiff. *Id.* at ¶ 10. If ESC made prompt payment to all persons providing labor, material, equipment, supplies or services to perform under the subcontract, the obligation to pay would be void; otherwise, the payment bond would remain in effect. *Id.*

As security for and to guarantee the payment bond, the performance bond, and the subcontract, Defendant issued Irrevocable Trust Receipt ESCWTCC05292012-1 on May 29, 2012, irrevocably acknowledging with full trustee responsibility its receipt of cash or assets valuing $542,223.00 to be held in trust for Plaintiff. *Id.* at ¶ 11; *see also* Irrevocable Trust Receipt, attached as Exhibit 1 to the Complaint. The Irrevocable Trust receipt matured on May 29, 2013. *Id.*

ESC defaulted on its obligations under the subcontract, and Plaintiff provided the notice of default to ESC, Diaz, and Defendant, as required by the subcontract. *See* Complaint at ¶¶ 12-14. ESC did not cure the defaults within the subcontract's cure period, and Diaz did not notify Plaintiff whether it intended to remedy the default or complete the subcontract. *Id.* at ¶ 16. Pursuant to the subcontract, Plaintiff terminated the contract by letter dated April 2, 2013. *Id.* at ¶ 17. As a result of ESC's default, Plaintiff incurred $494,533.22 in losses, damages, and expenses as a direct and proximate cause of ESC's breach. *Id.* at ¶ 19..

On May 23, 2013, Plaintiff filed the Complaint to recover $494,533.22 in damages plus post-judgment interest under the Irrevocable Trust Receipt. Plaintiff served Angie Kleinfeldt, resident agent for First Mountain Bancorp, with the Summons (Dkt. #5) and Complaint. Defendant failed to file a responsive pleading, and on June 21, 2013, the Clerk of Court entered default against Defendant. *See* Clerk's Entry of Default (Dkt. #9). The same day, Defendant's owner, George Gowen, attempted to appear pro se on Defendant's behalf and filed several Motions (Dkt. ##10, 11) which were stricken by the court in an Order (Dkt. #16) entered August 1, 2013, because a corporation can only appear through counsel. The court also directed

Defendant to retain counsel twice. *See* Orders (Dkt. ##15, 16). Defendant did not comply. In addition, Defendant failed to file a certificate of interested parties pursuant to LR 7-1 despite being ordered to do so by the court. *See* Order (Dkt. #15). Plaintiff now seeks default judgment against Defendant.

## DISCUSSION

### I. Adequacy of Service of Process.

As a preliminary matter, the court must determine whether Plaintiff adequately served process. "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly." *Direct Mail Specialists Inc. v. Eclat Computerized Tech. Inc.,* 840 F.2d 685, 688 (9th Cir. 1988). According to Rule 4 of the Federal Rules of Civil Procedure, a Plaintiff may serve a business by delivering a copy of the summons and the complaint to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e)(2). Here, the Plaintiff served Defendant's resident agent on June 18, 2013. *See* Summons Returned Executed (Dkt. #5). Defendant received proper service of the Summons and Complaint.

### II. Procedural Requirements.

Obtaining a default judgment is a two-step process. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *see also* Fed. R. Civ. P. 55. First, the Clerk of Court must enter the party's default. Fed. R. Civ. P. 55(a). Second, the party must petition the court for default judgment. Fed. R. Civ. P. 55(b). However, if the party against whom default judgment is sought appears personally or through a representative, that party or its representative must be served with written notice of the application for default judgment at least seven days before the hearing. *Id.*

Here, the Clerk entered default against the Defendant on June 21, 2013. Plaintiff petitioned the court for default judgment on September 17, 2013. Though George Gowen attempted to appear on Defendant's behalf pro se, a corporation cannot appear except through counsel. *See Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993); *U.S. v. High Country Broadcasting Co., Inc.*, 3 F.3d 1244, 1245 (9th Cir. 1993). Therefore, Defendant has not "appeared" for purposes of Rule 55(b)(2), and Plaintiff complied with the procedural requirements of Rule 55 to obtain default judgment.

### III. Default Judgment (*Eitel* Factors).

The district court has discretion to grant or deny default judgment. *See Lau Ah Yew v. Dulles*, 236 F.2d 415, 416 (9th Cir. 1956). Before entering default judgment, the court should consider: (1) the possibility of prejudice to Plaintiff, (2) the merits of Plaintiff's substantive claim and the sufficiency of the complaint, (3) the sum of money at stake in the action, (4) the possibility of a dispute concerning material facts, (5) whether the default was due to excusable neglect, and (6) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72.

#### A. Possibility of Prejudice to the Plaintiff.

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if default judgment is not entered. The standard is whether a plaintiff's ability to pursue the claim will be hindered if the court does not enter default judgment. *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner,* 532 U.S. 141 (2001); *see also PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (granting default judgment where plaintiff would likely be without any other recourse).

Here, Defendant has failed to take action to defend this action or properly appear. It did not designate counsel of record or file a certificate of interested parties despite being ordered to do so by the court. On both occasions, the court stated that failure to comply could result in case-dispositive sanctions. Both deadlines expired without compliance. Defendant has failed to properly appear in or defend this action, and as a result, Plaintiff is left without a remedy if default judgment is not entered in its favor.

#### B. Plaintiff's Substantive Claim and Sufficiency of the Complaint.

The second and third factors weigh in favor of default judgment because the Complaint contains sufficient factual allegations to state a claim upon which relief can be granted. *See Eitel*, 782 F.2d at 1471. Upon entry of default, the factual allegations in the complaint, except those relating to the amount of damages, are taken as true. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The court should only look at whether the complaint sufficiently

4

states a claim under the liberal pleading standards of Rule 8 of the Federal Rules of Civil Procedure. *See Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978).

Plaintiff alleges it entered into a binding subcontract with ESC on October 25, 2010. Thereafter, ESC and Lori Diaz executed a payment and performance bonds for $542,223.00. Defendant issued Irrevocable Trust Receipt #ESCWTCC05292012-1, acknowledging receipt of $542,223.00 in cash or cash-equivalent assets held in trust for Plaintiff. Plaintiff alleged ESC breached the subcontract by failing to: provide sufficient manpower and management, pursue work in a timely manner, provide materials, and provide proper bonds. Pursuant to the subcontract, Plaintiff notified ESC of the default, but ESC failed to remedy the default within the allotted time. Plaintiff terminated the subcontract with ESC pursuant to the terms of the agreement. After ESC's default, Plaintiff provided Defendant with an invoice in accordance with the Irrevocable Trust Receipt demanding payment of $494,533.22. The court find the Complaint makes sufficient factual allegations to state a claim under Rule 8.

**C.  Sum of Money at Stake in the Action.**

The third *Eitel* factor requires the court to consider the amount of money at stake in relation to the seriousness of a defendant's conduct. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1176; *see also Eitel*, 782 F.2d at 1472. Plaintiff seeks $494,533.22, together with post-judgment interest, for Defendant's failure to pay under the Irrevocable Trust Receipt. The amount of money at stake is substantial. However, bonding is an essential part of the construction industry. *See* Peter A. Alces, *The Law of Suretyship and Guarantee* § 10.1 (June 2014). A surety bond ensures the completion of a project in the event of a contract party's default. *Id*. Defendant's failure to pay as required by the Irrevocable Trust Receipt weighs in favor of default judgment.

**D.  Possibility of a Dispute Concerning Material Facts**

The fifth *Eitel* factor considers the possibility of dispute regarding any material facts in the case. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Upon entry of default, all well-pled facts in the complaint are taken as true, except those relating to damages. *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915. 917-18 (9th Cir. 1987). Here, no genuine dispute of material facts exists, and this factor weighs in favor of default.

5

### E. Whether the Default Was Due to Excusable Neglect.

The sixth *Eitel* factor considers the possibility the default resulted from excusable neglect. *See Eitel*, 782 F.2d at 1472. A defendant is culpable if he received actual or constructive notice of the action and failed to answer. *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987) (citing, *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 815 (9th Cir. 1985); *Benny v. Pipes*, 799 F.2d 489, 494 (9th Cir. 1986)). Plaintiff properly served Defendant's resident agent with the Summons and Complaint. Additionally, George Gowan, Defendant's owner, attempted to appear pro se to defend this lawsuit. Plaintiff properly served Defendant, and Defendant's owner had actual and constructive knowledge of the instant action. Thus, the likelihood of excusable neglect is remote, and this factor weighs in favor of default..

### F. The Strong Policy Favoring Decisions on the Merits.

Cases should be decided on the merits whenever reasonably possible. *See Eitel*, 782 F.2d at 1472. The mere existence of Rule 55(b), however, indicates that this "preference, standing alone, is not dispositive." *PepsiCo, Inc.,* 238 F. Supp. 2d at 1177. Defendant's failure to respond to Plaintiff's Complaint makes a decision on the merits impossible. *Id*. Rule 55(a) allows the termination of a case before hearing the merits whenever a defendant fails to defend an action. *Id*. Here, Defendant failed to defend, and a hearing on the merits is therefore impossible. This factor also weighs in favor of default.

After weighing all *Eitel* factors, this court recommends that entry of the default judgment is appropriate in the amount of $494,533.22.

### D. Post-judgment Interest.

In diversity actions, federal law determines the post-judgment interest rate. *Am. Tel. & Tel. Co. v. United Computer Sys., Inc*., 98 F.3d 1206 (9th Cir. 1996). Post-judgment interest shall be allowed at the rate specified in 28 U.S.C. § 1961(a).

/ / /

/ / / /

/ / /

/ / /

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's Motion for Default Judgment (Dkt. #17) be GRANTED, and Plaintiff be awarded damages totaling $494,533.22, plus post-judgment interest.

Dated this 25th day of July, 2014

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE